UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARLOS A. GONZALEZ | ) | CASE NO. 1:13CV1229 |
| | ) | |
| Plaintiff | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | **MEMORANDUM AND OPINION** |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

Plaintiff requests judicial review of the final decision of the Commissioner of Social Security denying Carlos A. Gonzales Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The Plaintiff asserts that the Administrative Law Judge (ALJ) erred in his January 23, 2012 decision in finding that Plaintiff was not disabled because he retained the capacity to perform a reduced range of sedentary work (Tr. 111, Finding No. 5). The Court finds that substantial evidence supports the ALJ's decision for the following reasons:

**I.    PROCEDURAL HISTORY**

Plaintiff, Carlos A. Gonzales, filed his application for DIB and SSI on July 22, 2010, alleging that he became disabled on April 21, 2010 (Tr. 301-304). Plaintiff's application was denied initially and on reconsideration (Tr. 241-243, 248-251, 258-260, 265-267). Plaintiff requested a hearing before an ALJ, and, on September 15, 2011, a hearing was held where Plaintiff appeared with counsel

and testified before an ALJ, and Ted Macy, a vocational expert, also testified (Tr. 123-141).

On January 23, 2012, the ALJ issued his decision, finding Plaintiff not to be disabled (Tr. 108-116). Plaintiff requested a review before the Appeals Council, and the Appeals Council denied Plaintiff's request for review (Tr. 1-7, 101). Therefore, Plaintiff has requested judicial review of the Commissioner's final decision pursuant to 42 U.S.C. Section 405(g) and 42 U.S.C. Section 1383(c).

## II.    STATEMENT OF FACTS

Plaintiff was born on May 21, 1983, which made him twenty-six years old as of his alleged onset date (Tr. 301). Plaintiff received his GED (Tr. 326). His past relevant work was as a nursery worker, which was unskilled work, and performed at a heavy exertional level (Tr. 136, 327).

## III.   SUMMARY OF MEDICAL EVIDENCE

Plaintiff limited his arguments to his physical impairments only, and primarily his left knee (Pl.'s Br. at 11-20).

Plaintiff alleged that he found out he had multiple sclerosis in 2004 (Tr. 548), yet a CT scan of his brain, taken in November 2009, was normal (Tr. 423).

In February 2010, Plaintiff slipped and fell on ice while he was moving a trailer at work, and the trailer hitch struck his left leg and knee (Tr. 557, 569, 807, 848).

An MRI of Plaintiff's left knee, taken in April 2010, showed chondromalacia patella (Tr. 357, 448, 506, 567, 678, 834, 852). An MRI of Plaintiff's thoracic spine was negative (Tr. 520).

Plaintiff's primary care physician, Gregory C. Brant, D.O., issued Plaintiff a "No Restrictions" "Return to Work" slip on April 5, 2010 (Tr. 522).

In early May 2010, Plaintiff began seeing John Posch, M.D. for his left knee (Tr. 569, 844). On examination, Plaintiff had 0 to 140 degrees of range of motion with no laxity or effusion, negative Apley and McMurray test and diffuse discomfort mainly on palpation of the patella (Tr. 569). Dr. Posch diagnosed nonspecific knee pain secondary to chondromalacia of the patella and contusion of the left knee (Tr. 569). He ordered a quadriceps strengthening program, since surgery was usually not helpful for this type of problem (Tr. 569).

Dr. Posch also observed that Plaintiff walked with a limp in the office when he knew he was being watched, but then walked with a normal gait out to the parking lot after the office visit, unaware that he was being observed (Tr. 569). In conclusion, Dr. Posch stated, "I do not find any evidence of any major knee pathology in this individual" (Tr. 569).

Plaintiff then sprained his left foot in late May 2010 (Tr. 395, 471, 480, 710, 716, 828).

Plaintiff then saw William A. Seeds, M.D., an orthopedist, in May 2010 for his left knee pain (Tr. 561, 564, 849-850). Dr. Seeds determined that Plaintiff had a mechanical knee problem consistent with his injury and the MRI showing a full thickness cartilage defect from direct trauma (Tr. 562, 565, 850). The plan was for Plaintiff to undergo arthroscopic intervention (Tr. 562, 565). Dr. Seeds issued Plaintiff a three-month excuse from work (Tr, 673).

In May 2010, Plaintiff denied having any limitations in activities of daily living, and reported that he raised pit bulls and liked to attend dog shows and do things with his children (Tr. 548).

Plaintiff slipped on concrete steps in July 2010, affecting his left knee (Tr. 452-453). An x-ray was unremarkable (Tr. 459).

In August 2010, Dr. Seeds examined Plaintiff in follow up for his left knee (Tr. 507, 597). Plaintiff's diagnosis was full thickness cartilage defect that continued to be a problem; they were awaiting approval for surgical intervention (Tr. 508, 598). Dr. Seeds issued Plaintiff another three-

month excuse from work (Tr. 674).

Plaintiff underwent an independent medical examination (IME) in late August 2010 by Gregory A. Moten, D.O. in connection with a worker's compensation claim (Tr. 557-559, 871-873). Dr. Moten noted that Plaintiff's MRI was consistent with blunt trauma, and stated that Plaintiff may require arthroscopic intervention to repair the defect (Tr. 559, 873).

Oscar F. Sterle, M.D. conducted a second IME in late August 2010 (Tr. 587, 862). Plaintiff described the nature of his February 2010 knee injury that occurred while working as a general laborer at a nursery (Tr. 587, 862). He complained of knee pain, swelling, and stiffness (Tr. 588, 863). Dr. Sterle reviewed and summarized Plaintiff's medical records (Tr. 588-589, 863-864). Plaintiff's examination showed: walking with a significant limp on the left; good alignment of the lower limbs; ability to rise on toes and heels; ability to squat with no obvious weakness; no swelling or effusion of the left knee; no redness, scars, or discoloration of the left knee; good patellar tracking with no evidence of subluxation; negative patellar apprehension and tracking compression tests; no evidence of knee instability; normal range of motion on extension, and slightly reduced range of motion on flexion; intact sensation of the lower limbs; no muscle atrophy of the lower limbs, with equal circumference measurements; and good motor strength of the quadriceps and hamstrings (Tr. 590-591, 865-866).

State agency physician, W. Jerry McCloud, M.D., reviewed Plaintiff' medical evidence in October 2010, and opined that Plaintiff retained the capacity to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for a total of four hours in an eight-hour workday, and sit for about six hours in an eight-hour workday; and that he could never use left foot controls and could occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl, but never climb (Tr. 180, 196). Dr. McCloud specifically stated that he was limiting Plaintiff to four hours of

standing and walking, due to left knee pain (Tr. 180, 196). William Bolz, M.D. later agreed with this assessment in February 2011 (Tr. 214, 232).

Carl Rosenberg, M.D. examined Plaintiff in November 2010, at the request of Plaintiff's primary care physician, Dr. Brant (Tr. 774-775). Plaintiff's medications included Lyrica, Oxycodone, and Baclofen for muscle twitching and pain (Tr. 774). Dr. Rosenberg noted that Plaintiff reported a history of an MS diagnosis, but had a negative CT scan and had never had a true MS exacerbation (Tr. 774). He also had no history of any transient neuralgic deficit and no visual disturbance (Tr. 774). Dr. Rosenberg stated that, "[w]hile [Plaintiff] may have had signs of a demyelinating event, he had no history compatible with MS" (Tr. 775). Nevertheless, Plaintiff reported that he was seeking disability benefits for MS (Tr. 774). Plaintiff's motor examination showed normal strength, tone, and bulk in all four extremities (Tr. 775). Dr. Rosenberg assessed Plaintiff as having anxiety (Tr. 775).

In December 2010, Dr. Rosenberg wrote to Dr. Brant about his examination of Plaintiff for low back pain, after reviewing Plaintiff's brain and thoracic spine MRI's (Tr. 719, 768). Dr. Rosenberg reiterated that Plaintiff's MRI showed no definitive evidence of multiple sclerosis plaques, and stated, "I highly doubt that this gentleman has multiple sclerosis" (Tr. 719, 768). Plaintiff's C-spine MRI was negative (Tr. 719, 769). Dr. Rosenberg stated that the most he could find was "a report of a possible mild L5 disc" (Tr. 719, 768).

The record next shows that Plaintiff underwent a left knee arthroscopy on December 23, 2010, after which Dr. Seeds prescribed physical therapy (Tr. 659, 664, 666). A physical therapy report dated February 2011 states that Plaintiff no longer experienced his knee giving out and had increased range of motion from treatment (Tr. 898).

In May 2011, Dr. Seeds recommended a synthetic joint fluid injection for Plaintiff's knee pain (Tr. 804). On examination, Plaintiff had full range of motion, 5/5 strength, and no instability (Tr.

5

803).

Thereafter, Plaintiff fell in June 2011 and sought an examination in the Emergency Department for his left foot (Tr. 1011-1013).

Dr. Seeds recommended a repeat MRI of Plaintiff's left knee in July 2011 (Tr 801).

In July 2011, Thomas Jones, M.D. assessed Plaintiff as having grade IV chondromalacia patellae, mild distal quadriceps tendinosis, and small effusion based upon an MRI (Tr. 797, 1043). Dr. Seeds recommended arthroscopy with further debridement chondroplasty of the defect (Tr. 796).

In August 2011, Plaintiff reported continued knee pain, and Dr. Seeds noted that Plaintiff's MRI showed further articular defect (Tr. 905). Dr. Seeds performed a left knee arthroscopy on September 1, 2011 (Tr. 906-907).

In early October 2011, Plaintiff underwent surgical repair of a torn anterior cruciate ligament (ACL) (Tr. 914-915, 1005-1006, 1025).

On examination by Dr. Seeds in November 2011, Plaintiff had increased scar tissue around the knee and had reduced flexion and extension (Tr. 919). Dr. Seeds recommended an arthroscopic evaluation (Tr. 919).

Plaintiff had another left knee arthroscopy on December 8, 2011 (Tr. 1034-1035).

In early January 2012, Plaintiff slipped and fell on ice in his backyard, sustaining a left knee contusion (Tr. 1015, 1039). Dr. Seeds sent him for another MRI (Tr. 1039). In January 2012, Dr. Seeds referred Plaintiff to Gilbert H. Maulsby, M.D. to interpret the MRI (Tr. 1041-1042). Dr. Maulsby concluded that Plaintiff had at least intermediate grade patellofemoral compartment chondromalacia, post-surgical change of ACL graft and medial meniscectomy, and no recurrent meniscal tear or graft tear (Tr. 1042).

In late January 2012, Dr. Seeds reported that Plaintiff's MRI showed no change and that his ACL was still intact with no effusion (Tr. 1041). Plaintiff was developing a pain syndrome of the soft tissue (Tr. 1041). He opined that with Plaintiff's sensitivity and difficulty progressing, that he was "not a candidate for any type of work presently" (Tr. 1041). The plan was to send him to pain management (Tr. 1041).

In February 2012, Tim Nice, M.D. wrote to Plaintiff's attorney, after examining Plaintiff's knee (Tr. 1046-1047). Dr. Nice noted that, following ACL repair surgery by Dr. Seeds, Plaintiff developed some tightness in his knee and lacked full extension and flexion, but that this would improve for up to two years (Tr. 1046). He felt it was necessary for Plaintiff to wear a knee brace (Tr. 1046). Dr. Nice opined that it would be unrealistic for Plaintiff to return to the hard labor-type work that he had done in the past (Tr. 1046). He stated that sedentary-type work would put Plaintiff at less risk of re-injury to his knee (Tr. 1046). He added that Plaintiff would walk with a slight limp, have difficulty squatting and going up and down ladders/inclines/scaffolding, and would experience aching in inclement weather (Tr. 1046).

## IV.   **SUMMARY OF TESTIMONY**

At that hearing before the ALJ, Plaintiff testified that he felt he was disabled because he was diagnosed with multiple sclerosis in 2004, he finds it hard to bend down because of his knee, and he has back pain (Tr. 126). With respect to activities, Plaintiff testified that he spends his time with his children, going to his mother's house, using the computer, and trying to keep himself busy (Tr. 128). On the computer, Plaintiff chats on Facebook and looks at dogs, bikes, and cars (Tr. 135). He stated that he has "two little kids," and tries to play with them as much as he can until he starts getting bad pain (Tr. 128). Plaintiff cannot get daycare for his children because he is off from work, and he does

7

not have anyone else to watch them (Tr. 128).  Plaintiff also does home exercises because he is supposed to stretch out his thigh muscle "because that's where [his] ACL's are at" (Tr. 128).  The ALJ asked about Plaintiff's drinking of alcohol, and he testified that he is not alcoholic, but on some days he drinks a 12-pack, on others "maybe six" (Tr. 129).  When asked what medications he took for pain, Plaintiff testified, "I get Percocets" (Tr. 129).  Plaintiff also testified about falling down his basement steps and falling down his porch steps (Tr. 131).  As part of his physical therapy for his back, Plaintiff rides a bicycle and uses the squat machine (Tr. 134).  Plaintiff is able to drive, and drove himself to the hearing (Tr. 135).

Thereafter, the VE testified that Plaintiff's past job as a nursery worker was heavy, unskilled work (Tr. 136). The ALJ posed a hypothetical question to the VE, asking him to assume a twenty-eight year old individual of the same age, with a GED, and the same work background as Plaintiff (Tr. 137).  This hypothetical individual can lift/carry twenty pounds occasionally and ten pounds frequently; stand six out of eight hours, walk six out of eight hours, and sit six out of eight hours; has no ability to use a left foot pedal, but can occasionally use a ramp or stairs, but never a ladder, rope or scaffold; can frequently balance, occasionally stoop, never kneel, occasionally crouch, and never crawl; needs to avoid temperature extremes and unprotected heights; and cannot do complex tasks, but can do simple routine tasks (Tr. 137).  The job cannot have stress, high production quotas, or piece rate work, and cannot involve arbitration, negotiation, or confrontation (Tr. 137).  Finally, the hypothetical individual can have only superficial interpersonal interactions with the public, co-workers, and supervisors (Tr. 137).

In response, the VE testified that an individual with that profile could perform jobs that exist in significant numbers in the regional and national economies, including the light unskilled jobs of bench assembler and wire worker.  The VE also identified the sedentary job of final assembler (Tr.

138). The VE further testified that the jobs of bench assembler and wire worker can also be performed at the sedentary level, but would exist at reduced numbers (Tr. 138). Some other options that fit at the sedentary level included table worker and bench hand, which also exist in significant numbers in the national economy (Tr. 139). Upon additional questioning from Plaintiff's counsel, the VE testified that these jobs allowed for a sit/stand option and the use of a crutch while standing or walking (Tr. 139).

## V.     EVIDENCE SUBMITTED AFTER THE ALJ'S DECISION

Plaintiff submitted additional evidence after the ALJ issued a decision in January 2012 denying Plaintiff's claim for disability benefits (Tr. 9-100).

This evidence indicates that Arpan Desai, D.O. examined Plaintiff in February 2012 (Tr. 97-98). Dr. Desai observed that Plaintiff had full 5/5 motor strength and tone in his lower extremities (Tr. 98). He had no obvious instability of his knee, but decreased range of motion with pain (Tr. 98). There was no obvious atrophy (Tr. 98). Dr. Desai noted that Plaintiff was on "high dose opioids," and had a history of alcohol abuse (Tr. 98). To treat Plaintiff's left knee pain, Dr. Desai administered a left lumbar sympathetic block with fluoroscopic guidance in February 2012 and in March 2012 (Tr. 91, 94).

Plaintiff underwent a knee examination by Donald P. Goodfellow, M.D. in May 2012 (Tr. 82-83). Plaintiff reported to Dr. Goodfellow that he has a few drinks per day to help with pain (Tr. 82). Dr. Goodfellow observed that Plaintiff had flexion contracture (Tr. 83). His impression was fibro-arthrosis post ACL reconstruction (Tr. 83).

Plaintiff went to the Emergency Department in June 2012 for back pain (Tr. 10). Plaintiff had lifted up a child who had fallen off a bicycle, and pulled his back (Tr. 13, 15, 79). Spine CT scans

were unremarkable (Tr. 17-18).

In July 2012, Plaintiff sought an Emergency Department examination for complaints of chest pain/chest wall pain (Tr. 20). He was assessed as having costochondritis (inflammation of the cartilage that attaches the ribs to the breastbone) (Tr. 21).

In September 2012, Plaintiff went to the Emergency Department after he slipped going down the deck and injured his foot (Tr. 30). He was assessed as having plantar fascitis (Tr. 31).

In late October 2012, at a pre-surgical assessment and physical, Plaintiff reported that he fell in mid-October when his knee went out (Tr. 47).

Plaintiff's attorney referred him to Timothy Nice, M.D. (Tr. 82), who performed exploratory knee surgery on October 31, 2012 (Tr. 59-60). Dr. Nice noted that Plaintiff's knee was normal, but showed the previous ACL repair and chondromalacia of the patella (Tr. 60). There were no clinical signs of significant instability (Tr. 60).

In November 2012, Plaintiff again went to the Emergency Department, this time because he tripped and fell in the yard, and his hand touched a hot muffler (Tr. 34). His burned hand was treated and bandaged (Tr. 35).

The new evidence also shows that Dr. Brant continued to prescribe Plaintiff Oxycodone (Tr. 76-78, 86-88).

## VI.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits and supplemental security income. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (Sections 20 C.F.R. 404.1520(b) and 416.920(b) (1992);

    2.        An individual who does not have a "severe impairment" will not be found to be "disabled" (Sections 20 C.F.R. 404.1520(c) and 416.920(c)(1992);

    3.        If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* Sections 20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in Sections20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (Sections 20 C.F.R. 404.1520(d) and 416.920(d) (1992);

    4.        If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (Sections 20 C.F.R. 404.1520(e) and 416.920(e) (1992);

    5.        If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (Sections 20 C.F.R. 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan,* 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity.  *See, Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990).

### VII.   STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by Section 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. Section 405(g).

11

Therefore, this Court is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *See, Abbott v. Sullivan,* 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *See, Walters v. Commissioner of Social Security,* 127 F.3d 525., 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See, Richardson v. Perales,* 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *See, id., Walters,* 127 F.3d 525, 532 (6th Cir. 1997). Substantiality is based upon the record taken as a whole. *See, Houston v. Secretary of Health and Human Servs.,* 736 F.2d 365 (6th Cir. 1984).

## **VIII. ANALYSIS**

Plaintiff raises three issues:

A. WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DETERMINATION THAT PLAINTIFF'S SEVERE IMPAIRMENTS DID NOT MEET, OR AT LEAST EQUAL, LISTING 1.02(A).

B. WHETHER THE ADMINISTRATIVE LAW JUDGE ERRED IN FAILING TO PROVIDE A PROPER AND ADEQUATE ANALYSIS OF THE PLAINTIFF'S PAIN COMPLAINTS.

C. WHETHER MEDICAL EVIDENCE SUBMITTED SUBSEQUENT TO THE HEARING IS NEW AND MATERIAL EVIDENCE WARRANTING REMAND.

The ALJ issued a decision on January 23, 2012, finding that Plaintiff had the "severe" impairments of contusion and articular cartilage defect of the left knee, chronic low back pain with mild L5 disc disease, attention deficit disorder, mood disorder, and anxiety (Tr. 109, Finding No. 3). He further found that Plaintiff retained the capacity to perform a reduced range of sedentary work (Tr.

111, Finding No. 5).

Based upon this residual functional capacity (RFC), the ALJ determined that Plaintiff could not perform his past relevant work as a nursery worker (Tr. 115, Finding No. 6), but that he could perform the representative sample of jobs that the VE identified (Tr. 116, Finding No. 10). Therefore, Plaintiff was not disabled and not entitled to benefits (Tr. 116, Finding No. 11).

First, Plaintiff argues that the ALJ erred in failing to find that his left knee impairment met or equaled Listing 1.02A (Pl.'s Br. at 11-14). However, the Court finds that Plaintiff does not have an inability to ambulate effectively, and, hence, he does not meet or equal this Listing.

Listing 20 C.F.R. pt. 404, subpt. P, app.1., Listing 1.02, requires the showing of "major dysfunction of a joint(s) (due to any cause)," characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) with:

> A.    Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), **resulting in inability to ambulate effectively, as defined in 1.00B2b;**

Section 1.00B2b states that to ambulate effectively:

> individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory services, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single handrail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P, app. 1., section 1.00B2b.

13

Plaintiff's bases his arguments on whether he is able to ambulate effectively as described in the regulations. The evidence does not demonstrate that Plaintiff was unable to ambulate effectively. Plaintiff concedes as much in his brief (Pl.'s Br. at 12). Plaintiff has only established that he walks with a limp (Pl.'s Br. at 12). However, the record shows that in May 2010, Dr. Posch observed Plaintiff walking with a limp in the office during the examination, but then walking with a normal gait out to the parking lot after the office visit when he thought no one was looking (Tr. 569).

Hence, there is no evidence in the record establishing the type of restricted ambulation that the Listing requires. In fact, Plaintiff testified that he is the full-time caregiver for his young children, as they are no longer in daycare (Tr. 128). He spends his time with his children, going to his mother's house, and keeping himself busy (Tr. 128). He stated that he tries to play with his "two little kids" as much as he can (Tr. 128). These activities contradict his claim that he cannot ambulate effectively.

The objective evidence also does not support a conclusion that Plaintiff meets or equals this Listing. A physical therapy report dated February 2011 states that Plaintiff no longer experienced his knee giving out and had increased range of motion from treatment (Tr. 898). In addition, Dr. Seeds notes in May 2011 that Plaintiff had full range of motion of his knee, 5/5 strength, and no instability (Tr. 803). In February 2012, Dr. Desai observed that Plaintiff had full 5/5 motor strength and tone in his lower extremities (Tr. 98). He also had no obvious instability of his knee and no obvious muscle atrophy (Tr. 98).

While Plaintiff claims the use of one crutch on occasion, the Listing contemplates needing *two* canes or *two* crutches for ambulation to be considered ineffective. As of February 2012, Plaintiff's only prescribed medical device was a knee brace, as Dr. Nice noted (Tr. 1046). Also, Dr. Nice opined that Plaintiff could not return to the hard-labor type work that he had done in th past (Tr. 1046), not that he was completely unable to work. The only limitations he observed were that Plaintiff walked with a *slight* limp, and would have difficulty squatting and going up and down

14

ladders/inclines/scaffolding (Tr. 1046).

Furthermore, W. Jerry McCloud, M.D. and William Bolz, M.D. opined that Plaintiff did not meet the Listing of impairments in 1.02. These Ohio state agency reviewing physicians are charged with the task of determining whether a claimant meets or equals a listing. They reviewed Plaintiff's medical evidence in October 2010, and opined that Plaintiff was able to perform a reduced range of light/sedentary work (Tr. 180, 196, 214, 232). The ALJ correctly relied on their opinions in concluding that Plaintiff did not meet or equal the listings. Drs. McCloud and Bolz are experts in the evaluation of the medical issues in disability claims under the Act, and, therefore, their opinions should be considered. *See*, 20 C.F.R. Sections 404.1527(e)(2)(i), 416.927(e)(2)(i) (2013). As highly qualified physicians, they are permitted to consider the evidence and determine whether a listing has been met or equaled or what RFC the claimant retains. 20 C.F.R. Sections 404.1527(f)(1), 416.927(f)(1); *See, also*, SSR 96-6p.

In regard to the next issue of Plaintiff, the ALJ correctly considered his subjective complaints of pain (Pl.'s Br. at 14-16). Plaintiff, who was born in 1983, was a very young man in his late 20's during the period at issue. His argument seems to focus on trying to convince this Court that the ALJ erred because he has a significant knee impairment. Plaintiff's knee impairment is not at issue – only the extent to which it limits his functioning. The record establishes that Plaintiff's left knee was a concern throughout the years. Hence, the ALJ, in his RFC finding, limited Plaintiff in finding him capable of only a reduced range of sedentary work (Tr. 111, Finding No. 5).

In regard to the argument of improperly evaluating pain (Pl.'s Br. 14-16), the ALJ must follow the Social Security Regulations, that once a claimant establishes a medically determinable impairment which could reasonably be expected to produce the pain or other symptoms alleged, the ALJ evaluates the intensity and persistence of the symptoms to determine how they limit the claimant's ability to perform work-related activities. 20 C.F.R. Section 404.1529.

15

The Social Security Regulations establish a two-step process for evaluating pain. *See*, 20 C.F.R. Section 416.929, SSR 96-7p. First, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain, or, objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See, id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847 853 (6th Cir. 1986). In other words, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See, id.* Secondly, the ALJ must then determine the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See, id.*

Here, the ALJ reviewed the medical evidence, and concluded that, while the medical records documented the existence of any impairment that could reasonably be expected to produce symptoms of pain, the claimant's allegations of disabling symptoms and limitations are not fully credible.

Moreover, to the extent that Plaintiff asserts that the ALJ was required to lay out various factors in some particular format in assessing his credibility and subjective complaints, there is no such requirement. The decision shows that the ALJ credited Plaintiff's complaints of pain to the extent that Plaintiff was incapable of work that was more demanding than the RFC finding. Additionally, with respect to medications (Pl.'s Br. at 16), even if they were not effective, this does not establish that Plaintiff was incapable of sedentary work. Plaintiff also alleges that the ALJ did not discuss his surgeries (Pl.'s Br. at 16), which is not the case (Tr. 112-113).

In addition, Plaintiff is not fully credible. Dr. Posch noted Plaintiff feigned limping (Tr. 569). Also, Plaintiff's activities, including caring for his young children, are not consistent with his allegations of not being able to work because of pain.

16

Furthermore, the objective findings on examination do not support Plaintiff's allegations. Dr. Sterle's examination in August 2010 showed that Plaintiff had good alignment of the lower limbs; no swelling or effusion of the left knee; no redness, scars, or discoloration of the left knee; good patellar tracking with no evidence of subluxation; negative patellar apprehension and tracking compression tests; no evidence of knee instability; normal range of motion on extension, and slightly reduced range of motion on flexion; intact sensation of the lower limbs; no muscle atrophy of the lower limbs, with equal circumference measurements; and good motor strength of the quadriceps and hamstrings (Tr. 590-591, 865-866). When Dr. Seeds examined Plaintiff's knee in May 2011, Plaintiff had full range of motion, 5/5 strength, and no instability (Tr. 803). Also, Dr. Desai observed, in February 2012, that Plaintiff had full 5/5 motor strength and tone in his lower extremities (Tr. 98).

To the extent Plaintiff alleges that he has problems with sitting (Pl.'s Br. at 16), the VE testified that the jobs identified allowed for a sit/stand option (Tr. 139). In conclusion, substantial evidence supports the ALJ's assessment of Plaintiff's credibility.

Finally, Plaintiff argues that remand is required on the basis of new evidence submitted to this Court (Pl.'s Br. at 17-19). However, a claimant has the burden of showing that the evidence is "new" and "material" and that there was "good cause" for not submitting it to the ALJ before his decision. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). The claimant has the burden of showing all three requirements. *Id.* Plaintiff has not met his burden of proof that the evidence relating to the period after the date of the ALJ's decision is appropriate for remand pursuant to the sixth sentence of 42 U.S.C. Section 405(g). *See, Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009).

Plaintiff has not shown that the evidence meets all three requirements. Although Plaintiff has submitted additional evidence of treatment and surgery, this evidence is not new evidence of the limiting effects of Plaintiff's condition prior to the ALJ's decision. Further, the evidence presented to the Appeals Council is after the relevant period, which ended on January 22, 2012, and is not

17

"material" within the meaning of 42 U.S.C. Section 405(g) because it deals with a change in condition after the administrative hearing.  The mere fact that Plaintiff underwent later additional knee surgery would not affect the ALJ's decision in this case.  The Commissioner would not have reached a different decision if presented with this evidence of a later worsening of Plaintiff's condition. *Id.* Plaintiff must show that the newly-submitted evidence was relevant to the time period at issue and that there was a probability that the Commissioner would have reached a different decision if presented with this evidence.  None of the evidence Plaintiff submitted supports limitations greater than the ALJ's initial RFC finding of a reduced range of sedentary work.

In addition, Plaintiff has also not satisfied the "good cause" requirement of sentence six, because he has not discussed this requirement (Pl.'s Br. at 17-19).

Since the evidence relating to the period after the date of the ALJ's decision was not really new or material, and Plaintiff has not established a good cause, remand pursuant to the sixth sentence of 42 U.S.C. Section 405(g) is denied.

## IX. CONCLUSION

Based upon a review of the record and law, the undersigned affirms the ALJ's decision. Substantial evidence supports the finding of the ALJ that Plaintiff retained the residual functional capacity (RFC) to perform a reduced range of sedentary work, and, therefore, was not disabled. Hence, he is not entitled to DIB and SSI..

Dated: June 16, 2014                    */s/George J. Limbert*
                                                        GEORGE J. LIMBERT
                                                        UNITED STATES MAGISTRATE JUDGE